Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
Noah J. Larsh (SBN 348541)
Noah@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343

Daniel G. Shay (SBN 250548)
Daniel@ShayLegal.com
**SAHAY LEGAL, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMY WRIGHT, individually and on behalf of others similarly situated.<br><br>Plaintiffs,<br><br>vs.<br><br>TRUECARE PROPERTY HOLDINGS, LLC,<br><br>Defendant. | CASE NO: 25-CV-00786-JES-BLM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(6) AND FRCP 12(F)**<br><br>Hon. Judge James E. Simmons<br><br>DATE: October 22, 2025<br>TIME: 9:00 AM<br>CRTRM: 4B |

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ALLEGED FACTS .......... 2

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 3

A. PLAINTIFF PROPERLY ALLEGED HER PROTECTED HEALTH INFORMATION ("PHI") WAS COLLECTED, WHICH IN ANY EVENT IS NOT REQUIRED FOR HER ECPA, CIPA, TRAP AND TRACE, AND INTRUSION OF SECLUSION CLAIMS. .......... 4

B. PLAINTIFF'S CIPA CLAIMS ARE TIMELY. .......... 8

C. PLAINTIFF SUFFICIENTLY ALLEGES ECPA AND CIPA CLAIMS. .......... 11

1. *AS CASES ASSESSING ALMOST IDENTICAL FACT PATTERNS CONFIRM, DEFENDANT CANNOT AVOID LIABILITY UNDER THE "PARTY EXCEPTION."* .......... 11

2. *PLAINTIFF NEED NOT DISCLOSE THE CONTENTS OF HER INTERCEPTED COMMUNICATIONS.* .......... 14

3. *PLAINTIFF NEED NOT ALLEGE THAT META DID SOMETHING TO "UNDERSTAND" THE COMMUNICATION WHILE IN TRANSIT.* .......... 16

D. PLAINTIFF ADEQUATELY ALLEGES INVASION OF PRIVACY. .......... 18

E. PLAINTIFF ADEQUATELY PLED A CMIA CLAIM. .......... 20

1. *PLAINTIFF ALLEGED SHE ENTERED PERSONALLY IDENTIFIABLE MEDICAL INFORMATION INTO DEFENDANT'S WEBSITE.* .......... 20

2. *PLAINTIFF ALLEGES THAT HER DATA WAS VIEWED BY A THIRD PARTY.* .......... 21

3. *DEFENDANT'S OPPOSITION TO CLASS CERTIFICATION IS PREMATURE.* .......... 23

V. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Cases** **Pages**

*ABS Ent., Inc. v. CBS Corp.*,
908 F.3d 405 (9th Cir. 2018) ... 23

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ... 9, 20

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal.Super. Jan. 05, 2023) ... 5, 20, 21

*Barnes v. Coca-Cola Co.*,
2025 WL 1027431 (E.D. Cal. Apr. 7, 2025) ... 25

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ... 3

*Beltran v. Drs. Med. Ctr. of Modesto*,
2025 WL 1635467,n.3 (E.D. Cal. June 9, 2025) ... 8, 16

*Beltran v. Drs. Med. Ctr. of Modesto*,
2025 WL 2106582 (E.D. Cal. July 28, 2025) ... 8, 16

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ... 10

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ... 16

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ... 12, 13, 22

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ... 11

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ... 12, 13

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......................................................5, 21, 22

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ..............................................................10

*Doe v. Kaiser Found Health Plan, Inc.*,
23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........................10

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ................................................................23

*Doe v. Tenet Healthcare Corp.*,
3d ---, No. 1:23-CV-01106-DC-CKD, 2025 WL 1635956 (E.D. Cal. June 9, 2025) ..
...............................................................................................5, 8, 16

*Fernandez v. CoreLogic Credco, LLC.*,
593 F. Supp. 3d 974 (S.D. Cal. 2022) .................................................................23

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797, 110 P.3d 914 (2005) .................................................................11

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ........................................................................24

*Frawley v. Nexstar Media Grp. Inc.*,
2024 WL 3798073 (N.D. Tex. July 22, 2024) ......................................................16

*Gabrielli v. Haleon U.S., Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025).......................................................10

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Mar. 2, 2025) ......................................9, 15, 19, 21, 24

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024).......................................................12

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ...............................................................15

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 19

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428,n.3 (E.D. Cal. June 9, 2025) .......... 8

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 2106581 (E.D. Cal. July 28, 2025) .......... 8

*Hernandez v. Hillsides, Inc.*,
47 Cal.4th 272 (2009) .......... 19

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 3, 4, 7, 12, 15, 17, 19

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 13

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 19

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) .......... 7, 8

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 2, 2, 9, 11, 20

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 15

*In re Yahoo Mail Litigation*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 18

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 16

*Javier v. Assurance IQ*, LLC,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 10

*Kamm v. California City Dev. Co.,*
509 F.2d 205 (9th Cir. 1975) .......... 23

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .......... 6
*Krayzman v. Yalla Ventures, Inc.*,
2024 WL 4536761 (C.D. Cal. Oct. 16, 2024) .......... 25
*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 19
*Lyons v. Coxcom, Inc.*,
718 F. Supp. 2d 1232 (S.D. Cal. 2009) .......... 23
*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .......... 17
*Manning v. Bos. Med. Ctr. Corp.*,
725 F.3d 34 (1st Cir. 2013) .......... 23
*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .......... 16
*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 13
Mem. at 18-20 .......... 11
Mem. at 27-31 .......... 22
Mem. at 32-34 .......... 23
*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) .......... 17
*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......... 13
*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 13
*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,
--- F.4th --- 2025 WL 2315671 (9th Cir. Aug. 12, 2025) .......... 3
*R.C. v. Sussex Publishers,* LLC,

2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .......... 13

*R.C. v. Walgreen Co*.,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 6, 10, 21

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 10

*Regents of Univ. of California v. Superior Ct*.,
220 Cal. App. 4th 549 (2013) .......... 22

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 14

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 10

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 6, 7

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 7, 17, 21, 22

*Strong v. LifeStance Health Group Incorporated*,
2025 WL 317552 (Dist. Arizona January 28, 2025) .......... 22

*Supermail Cargo, Inc. v. United States*,
68 F.3d 1204 (9th Cir. 1995) .......... 9

*Sutter Health v. Superior Ct*.,
227 Cal. App. 4th 1546 (2014) .......... 22

*Torres v. Prudential Fin., Inc.*,
No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 17, 18

*United States v. Councilman*,
418 F.3d 67 (1st Cir. 2005) .......... 18

*Vigil v. Muir Med. Grp. IPA, Inc.*,
84 Cal. App. 5th 197 (2022) .......... 22

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) .......... 3
*Zarif v. Hwareh.com, Inc.*,
3d ---, No. 23-CV-0565-BAS-DEB, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .......... 14

**Statutes**

18 U.S.C. § 2511(1) .......... 3
18 U.S.C. § 2511(2)(d) .......... 11
Cal. Civ. Code § 56.36(b)(1) .......... 24
Cal. Civ. Code §§ 56.06, 56.10, and 56.101 .......... 3
Cal. Civ. Proc. Code § 340 .......... 8
Cal. Penal Code § 630 .......... 8
Cal. Penal Code § 631 .......... 3
Cal. Penal Code § 631(a) .......... 4
Cal. Penal Code § 638.51 .......... 3

**Rules**

Fed. R. Civ. P. 8(a)(2) .......... 8
Fed. R. Civ. P. 12(b)(6) .......... 3, 9
Fed. R. Civ. P. 12(f) .......... 3

**Regulations**

78 Fed. Reg. 5566 (final rule, Jan. 25, 2013) .......... 1, 5, 24

**Other Authorities**

Federal Practice and Procedure Civil § 1785.3 (3d 2005) .......... 23

## I. INTRODUCTION

When a person visits a healthcare provider's website to find specialists, make an appointment, or search for health advice, she expects confidentiality. Federal and state laws protect this expectation, forbidding the use of tracking technologies like Meta's Pixel on healthcare websites. First Amended Complaint at ¶ 64 ("FAC") (ECF 24) (quoting Department of Health and Human Services bulletin). Irrespective of whether data about specific treatment is also collected, information connecting the person to the healthcare entity relates to the person's healthcare and should not be tracked. *Id.* at ¶ 69 *See also* 78 Fed. Reg. 5566, 5598 (final rule, Jan. 25, 2013).

Courts have repeatedly held that healthcare companies using Meta Pixel on their websites are liable under state and federal privacy statutes. Plaintiff Amy Wright ("Plaintiff") brings such a claim here, alleging that TrueCare Property Holding, LLC's ("Defendant's") covert and real-time interception and monetization of sensitive user data, including private health-related search queries on its website, violates federal and state law. *See, e.g.,* FAC at ¶¶ 2, 4, 6-8, 24, 29-33.

Seeking to have Plaintiff's claims dismissed, Defendant breaks no new ground and rehashes arguments that courts have already rejected. *See* Def. Mem. of Law in Support of Motion to Dismiss and Motion to Strike ("Mem.") (ECF 26-1). Defendant argues that Plaintiff did not specifically identify the search terms used on its website or what health conditions she has. But a Plaintiff alleging privacy violations need not publicize the very matters she tried to keep confidential. *See* § III.A, *supra*. Defendant asserts that Plaintiff should have known that it would disclose her private activity when she visited its webpages, though nothing alerted her to its surreptitious transmission through the invisible Meta Pixel. *See* § III.B, *supra*. Defendant denies liability for her ECPA and CIPA allegations, *see* § III.C, her invasion of privacy allegations, *see* § III.D, and her CMIA allegations, *see* § III.E, but fails to support a dismissal of her claims. Defendant tries to strike Plaintiff's CMIA class allegations, contending that her claims are inherently individualized and unsuitable for class treatment, though courts have

consistently recognized that CMIA violations can be proven through common evidence. *See* § III.E.3.

Defendant's motion should be denied. In the alternative, Plaintiff requests leave to amend to address any technical pleading deficiencies identified by the Court.

## II. ALLEGED FACTS

Defendant TrueCare Property Holding, LLC operates healthcare facilities throughout San Diego County. Its website, TrueCare.org, allows visitors to find healthcare providers, schedule an appointment, and manage medical records. FAC at ¶ 148.[1] It offers a searchable blog with advice on mental health, teen topics, prenatal care, HIV and AIDS, among other health issues.[2]

Plaintiff visited Defendant's website in 2023 and 2024 "to search for information about personal health conditions." FAC at ¶ 48. At the time, she did not know that Defendant intentionally installed advertising tracking software on its website (Meta Pixel), deliberately aiding Meta to learn of her personal health information and tying her every search and click on Defendant's website to her Facebook ID. FAC at ¶¶ 8-10, 19-30, 37, 72, 148, 149. Meta tracked "the exact terms and words Plaintiff . . . searched on the Website." *Id.* at ¶ 49. *See also id.* at ¶¶ 36, 52, 54, 72. It also collected "the selections [she] made from drop-down menus," links she clicked, and private information "including [her] health conditions." *Id.* at ¶¶ 33, 50. It gathered "personally identifying information—including names, phone numbers, email addresses, device identifiers, IP addresses, web URLs, Facebook IDs, and similar data—alongside health-related details such as appointments, medical conditions, diagnoses, patient history, and medical records." *Id.* at ¶ 148. Plaintiff did not consent to Defendant aiding Meta to intercept her communications or allowing it to invade her privacy. *Id.* at ¶¶ 32, 59, 97-98, 101, 108-09, 112.

---

[1] https://truecare.org/locations/

[2] https://truecare.org/blog/

Plaintiff brings this action on her behalf and others similarly situated under the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) ("ECPA"); California's Invasion of Privacy Act, Cal. Penal Code § 631 ("CIPA"); CIPA's "Trap and Trace" statute, Cal. Penal Code § 638.51; ; California's Constitutional provisions protecting her privacy, and California's Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56.06, 56.10, and 56.101 ("CMIA").

## III. LEGAL STANDARD

To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint need include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007). A well-pled complaint may proceed even if it appears "that recovery is very remote and unlikely." *Id.* at 556. "[A]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (reversing dismissal of ECPA, CIPA, and invasion of privacy claims based on Meta's collection of web browsing history).

A motion to strike allegations under Fed. R. Civ. P. 12(f) is limited to "redundant, immaterial, impertinent, or scandalous matter." Failure to demonstrate that the challenged material falls within these categories deprives a court of authority to strike the allegations. *See Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, --- F.4th --- No. 23-16093, 2025 WL 2315671, at *5 (9th Cir. Aug. 12, 2025) (denying motion to strike material that was not scandalous, did not appear elsewhere in the complaint, and directly related to the requested relief or alleged harm). *See also Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 976 (9th Cir. 2010) ("Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law.").

## IV. ARGUMENT

Other than asserting that *all* Plaintiff's claims must be dismissed because she does not disclose her specific health conditions or search terms used, *see* § III.A, *supra*,

Defendant makes no argument as to Plaintiff's Trap and Trace claim. Instead, its arguments relate only to her ECPA and CIPA claims (*see* § III.B-C, *supra*), her invasion of privacy claim (*see* § III.D, *supra*), and her CMIA claim (*see* § III.E, *supra*).

**A. <u>Plaintiff properly alleged her protected health information ("PHI") was collected, which in any event is not required for her ECPA, CIPA, Trap and Trace, and intrusion of seclusion claims.</u>**

Defendant contends that Plaintiff does not identify any "specific" personal health information ("PHI") that was disclosed. Mem. at 13:1. It insists that Plaintiff must identify the searches she performed that relate to *her own* medical conditions, Mem. at 14:11-15, 15:10-13, but she did not "identify the 'pages' she visited" or that "the contents of any searches she conducted . . . related to conditions she actually has (as opposed to searching out of curiosity . . .)." *Id.* at 13:19-20, 14:2-4.

First, liability under the ECPA, CIPA, CIPA's Trap and Trace statute, and common law intrusion of seclusion claims do not require PHI be disclosed. *See, e.g., In re Facebook, Inc.*, 956 F. 3d at 603, 605 (rejecting argument that "Plaintiffs need to identify specific, sensitive information that Facebook collected" given the enormity of data collected, including search terms used). For example, CIPA prohibits aiding another to learn the contents of "*any* message, report, or communication while . . . in transit" without all parties' consent. Cal. Penal Code § 631(a) (emphasis added).CIPA's "Trap and Trace" statute similarly does not require PHI be disclosed, and Defendant cites nothing to the contrary. As to Plaintiff's CMIA claim, Defendant's argument is addressed below and at § III.E.1, *infra*.

Second, Plaintiff sufficiently alleges that her PHI was collected. She alleges that she "visited Defendant's Website to search for information about personal health conditions," FAC at ¶ 48, and that Meta was tracking "the exact terms and words Plaintiff . . . searched on the Website," *id.* at ¶ 49, including "the specific health condition Plaintiff . . . searched." *Id.* at ¶ 54.

No more is needed. As the Health Insurance Portability and Accountability Act ("HIPAA") regulations explain:

> "protected health information . . . may not necessarily include diagnosis-specific information . . . and may be limited to demographic or other information not indicative of the type of health care services provided to an individual. If the information is tied to a covered entity, then it is protected health information by definition since it is indicative that the individual received health care services or benefits from the covered entity . . ."

78 FR 5566, 5598 (final rule, Jan. 25, 2013).

"Plaintiffs allege that their data included personal search queries—such as specialty healthcare providers and treatments for medical conditions—and therefore plausibly conveyed content: their PHI." *Cousin v. Sharp Healthcare,* 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) (denying motion to dismiss claims under CIPA, CMIA, and common law invasion of privacy). For example, *Cousin* held sufficient a plaintiff's allegation that the healthcare provider included Meta Pixel on its website and that she searched for a primary care physician by filtering for specialty. *Id.* at 973. *Cousin* held this "plausibly relate[s] to the provision of health care" even though the plaintiff did not specify her "particular medical conditions." *Id.*

Defendant asserts that Plaintiff does not allege that she searched health information "related to conditions she actually has (as opposed to searching out of curiosity, on behalf of someone else, or for professional research purposes)," Mem. at 14:2-5, but courts have already rejected the argument. "[I]t takes little 'deduction' to ascertain that a person who searched for a cardiologist may have a heart condition and may seek treatment for their perceived symptoms." *Barbour v. John Muir Health,* No. C22-01693, 2023 WL 2618967, at *7 (Cal.Super. Jan. 05, 2023) (holding the information was medical information under the CMIA). "The fact that there could be alternative explanations for the inquiries (e.g., they were on behalf of a friend or relative) does not change the essential nature of the information." *Id.*

Contrary to Defendant's insistence, *Walgreen* specifically rejected Defendant's argument that website browsing activity is insufficient for privacy claims. *See* Mem. at

15:10-13 (citing *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024)). "The Court disagrees with Defendant's attempt to paint a bright line barring privacy claim based on website browsing activity . . . The case law does not support that bright line rule." 733 F. Supp. 3d at 891-92. *Walgreen* held that the plaintiffs sufficiently alleged an invasion of privacy by the defendant pharmacy's use of a Meta Pixel that associated the products they put in their online shopping carts with their Facebook IDs. 733 F. Supp. at 891-92. A court can infer that such data related to the user's health, as "an internet user is very unlikely to purchase a diabetes test kit or a yeast infection treatment for reasons unrelated to the user's own health conditions." *Id.* at 893. Similarly here, Defendant collected "health-related details such as appointments, medical conditions, diagnoses, patient history, and medical records," FAC at ¶ 148, and it can infer that this data relates to the user's own health, not idle curiosity about others' health. *See, e.g., Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340, at *6 (W.D.N.Y. Mar. 19, 2024) (collection of a user's website clicks to schedule an appointment "tells Facebook that a particular individual sought medical care from one of Defendant's providers in a specific specialty. That makes it plausible that by disclosing this information, Defendant disclosed [individually identifiable health information].").

Defendant has no support from *Smith*, which dismissed privacy claims against Meta not because the data collected fell short of "protected health information," but because the plaintiffs consented to Meta's collection and sharing of their data. *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955-56 (N.D. Cal. 2017). *See also Walgreen*, 733 F. Supp. 3d at 892-93 (distinguishing *Smith*). Here, however, Plaintiff did not consent to Meta's collection of her data, and Defendant argues nothing to the contrary. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) ("Meta's policies do not . . . specifically indicate that Meta may acquire health data obtained from Facebook users' interactions with their medical providers' websites.").

To the extent *Smith* appears nonchalant about Meta's collection of generic health website URLs (such as www.cancer.net), it is no longer good law. Three years later, the

Ninth Circuit held that Meta's collection of web browsing history without consent constituted "a clear invasion of the historically recognized right to privacy." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (reversing dismissal of ECPA, CIPA, and invasion of privacy claims). The court explained that, by correlating browsing history with users' personal Facebook profiles—including employment history and political or religious affiliations—Meta created "a cradle-to-grave profile without users' consent." *Id.*

Moreover, subsequent cases confirm *Smith's* inapplicability to Pixel-related claims. Unlike in *Smith*, the Pixel captures data tying a specific user to a healthcare provider—i.e., patient status—information squarely within HIPAA's protections. In re Meta Pixel Healthcare Litig., 647 F. Supp. 3d 778, 792–93 (N.D. Cal. 2022). *Smith* concerned general browsing on health-related sites with embedded "Like" buttons, not the act of accessing a patient portal. *Id.* And here, the allegations go even further: the URLs transmitted to Meta embed search terms revealing "specific symptoms, physical condition, or course of treatment of an individual." *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667-JST, 2024 WL 4369675, at *12 (N.D. Cal. Oct. 1, 2024) (distinguishing *Smith* and denying dismissal under the CMIA and invasion of privacy claims).

It is also not necessary for Plaintiff to allege that she logged into a patient portal; "Plaintiffs' privacy claims are not foreclosed at this juncture in whole or part simply because their communications with their healthcare providers may have been through publicly available webpages." *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 655 (N.D. Cal. 2024). "[G]iven that plaintiffs were communicating with their healthcare providers about their healthcare needs, plaintiffs have alleged enough for this claim to proceed to discovery." *Id.*

Under Defendant's reasoning, plaintiffs alleging an invasion of privacy claim must disclose the very facts they want to keep private, effectively shaming them from filing suit or congesting the dockets with motions to file complaints under seal. For

example, after the Eastern District of California required the plaintiffs to specify the types of doctors and medical conditions they searched, *Harrill v. Emanuel Med. Ctr.*, No. 2:23-CV-01672-DC-CKD, 2025 WL 1635428, at *5 n.3 (E.D. Cal. June 9, 2025) (dismissing with leave to amend); *Beltran v. Drs. Med. Ctr. of Modesto*, No. 2:23-CV-01670-DC-CKD, 2025 WL 1635467, at *6 n.3 (E.D. Cal. June 9, 2025) (issuing substantively identical order), it subsequently had to seal the amended complaint "given the confidential and sensitive personal health information [it] contained." *Harrill v. Emanuel Med. Ctr.*, No. 2:23-CV-01672-DC-CKD, 2025 WL 2106581, at *2 (E.D. Cal. July 28, 2025); *Beltran v. Drs. Med. Ctr. of Modesto*, No. 2:23-CV-01670-DC-CKD, 2025 WL 2106582, at *2 (E.D. Cal. July 28, 2025) (issuing substantively identical order). Both cases adopted Defendant's flawed reading of *Walgreen* and *Smith*, and neither persuades.

As further addressed in section III.C.2, *infra*, requiring such granular specificity goes far beyond Fed. R. Civ. P. 8(a)(2)'s requirement of a "short and plain statement of the claim," and runs contrary to the purpose of CIPA, which was enacted "to protect the right of privacy of the people of this state." Cal. Penal Code § 630.

**B. <u>Plaintiff's CIPA claims are timely.</u>**

The applicable statute of limitations for Plaintiff's CIPA claims is one year. Cal. Civ. Proc. Code § 340. She complied: the earliest that Plaintiff learned of Defendant's CIPA violations was on December 6, 2024, FAC at ¶ 73, and she timely filed her claim less than four months later, on April 1, 2025. (ECF 1).

Nonetheless, Defendant contends that the one-year period started when Plaintiff visited its website, Mem. at 16:23-27, reasoning that she "alleges no facts explaining why she did not download her off-Facebook activity any earlier than December 6, 2024" nor "what prompted her to pull this report." Mem. at 17:21-23.

Defendant's argument does not meet the Rule 12(b)(6) standard for dismissal under the statute of limitations; "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the

timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (reversing dismissal, holding sufficient plaintiff's allegations that it did not discover the claim earlier because of defendant's failure to provide accurate information) (internal quotation marks and citation omitted).

As Plaintiff alleges, when she visited Defendant's website, she had no reason to believe it intentionally installed tracking software that aided Meta to learn her every interaction on the website, tying it with her Facebook ID. *See* FAC at ¶¶ 4, 6, 49, 72, 76. "[D]ue to the surreptitious nature of the Meta Pixel that Defendant installed on its Website, Plaintiff was completely unaware that Meta was involved and acting as a third-party eavesdropper, collecting personally identifiable information about Plaintiff." FAC at ¶ 76. This is sufficient to toll the statute of limitations under a theory of fraudulent concealment and under the discovery rule. *See Gaige v. Exer Holding Co., LLC,* No. 2:24-CV-06099-AH-(AJRX), 2025 WL 559719, at *4 (C.D. Cal. Mar. 2, 2025) (holding statute of limitations was tolled due to fraudulent concealment by health care provider's similarly surreptitious use of Meta Pixel).

Courts examining similar allegations have repeatedly denied motions to dismiss, concluding the complaint "does not present a statute of limitations issue that is facially apparent." *Doe v. Tenet Healthcare Corp.*, --- F. Supp. 3d ---, No. 1:23-CV-01106-DC-CKD, 2025 WL 1635956, at *26 (E.D. Cal. June 9, 2025) (denying motion given plaintiffs' allegations that, until the release of an investigative news article, "they did not know and had no way of knowing that Defendants were intercepting and unlawfully disclosing their PHI and PII to Meta . . . through the use of hidden tracking pixels"); *B.K. v. Desert Care Network*, No. 2:23-CV-05021 SPG (PDX), 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) (denying motion to dismiss similar CIPA claims); *Doe v. FullStory, Inc.,* 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024) (denying motion to dismiss CIPA claims, holding allegations of the specific "time and manner" of discovery was unnecessary given defendant's surreptitious use of proprietary technology); *Gabrielli v. Haleon U.S., Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368, at *9-10 (N.D. Cal.

Aug. 29, 2025) (similar).

Defendant fails to cite any authority supporting dismissal here. It instead cites *Saedi* and *Javier*, where the plaintiffs were on inquiry notice because the defendant's privacy policy disclosed that its website shared visitors' personal information with third parties. *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-CV-06525-WLH-E, 2025 WL 1141168, at *10 (C.D. Cal. Feb. 27, 2025) (privacy policy disclosed that pixel tags collected information that "could be linked to your Personal Information" and shared with third parties to support promotional activities); *Javier v. Assurance IQ*, LLC, 649 F. Supp. 3d 891, 902 (N.D. Cal. 2023) (privacy policy stated that the defendant "may use third party vendors to assist it with the collection of visitors' personal information."). But here, Defendant had no privacy policy language putting Plaintiff on inquiry notice, and "Plaintiff[ was] not obligated to investigate [her] claims until Plaintiff[] had reason to suspect the existence of [her] claims." *Brown v. Google LLC,* 525 F. Supp. 3d 1049, 1071 (N.D. Cal. 2021) (holding CIPA claim not time-barred where privacy policy did not disclose the alleged data collection) (internal quotation marks and citation omitted).

All the more, while Defendant's current website alerts users of its pixels, when the Plaintiff last accessed its website (January 9, 2024, *see* FAC at ¶ 72), the website contained no such notification as of Jan. 9, 2024.[3] Not only did Defendant's privacy policy conceal its use of cookies, but it assured visitors, "[w]e hold a responsibility to safeguard your personal health information," use PHI only for health-related activities, and "[i]f there are reasons we need to use your information not described in the sections above, we will obtain your written permission" as of Jan. 17, 2025.[4]

Defendant also has no support from *Clemens*, decided on summary judgment, where the plaintiff's deposition testimony demonstrated that he suspected an automotive part was defective and videotaped his repair efforts "apparently in

[3] https://web.archive.org/web/20240109084406/https://truecare.org/

[4] https://web.archive.org/web/20250117234551/https://truecare.org/privacy-policy/

preparation for litigation" more than three years before filing suit. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (affirming summary judgment on three-year statute of limitations). No similar facts appear here. *See Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal. 4th 797, 810, 110 P.3d 914, 922 (2005) (holding it abuse of discretion to deny leave to allege additional facts supporting equitable tolling, distinguishing cases decided on summary judgment).

### C. Plaintiff sufficiently alleges ECPA and CIPA claims.

#### 1. *As cases assessing almost identical fact patterns confirm, Defendant cannot avoid liability under the "party exception."*

As to Plaintiff's ECPA and CIPA claims, Defendant contends that, under the "party exception" of 18 U.S.C. § 2511(2)(d), it cannot be liable for interception because it was a party to the communication. Mem. at 18-20. However, this exception is expressly unavailable when the interception is carried out to commit a tort (the "crime-tort exception" to the "party exception"). 18 U.S.C. § 2511(2)(d) (stating a that a party to the communication remains liable if the interception is carried out "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.").

Here, Plaintiff has specifically alleged that Defendant intentionally intercepted, or procured Meta to intercept, her electronic communications for the purpose of sharing her personally identifiable and health-related information with Meta, in violation of state and federal law, including HIPAA and invasion of privacy laws. FAC ¶ 100. The Meta Pixel would duplicate and send to Meta requests for a specific webpage ("GET" requests), FAC ¶¶ 35-56, 38, 44, and the "simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception." *In re Facebook*, 956 F.3d at 608. "Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule." *Id.*

More particularly, as courts repeatedly hold, healthcare websites that install Meta Pixel to intercept visitor website activity are not protected by ECPA's party exception. *See Tenet Healthcare*, 2025 WL 1635956, at *24 (holding healthcare provider was not protected by party exception when its website used Pixel to intercept health information; "a monetary purpose does not insulate a party from liability under the ECPA"); *Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548-JHC, 2024 WL 4785136, at *6-7 (W.D. Wash. Nov. 14, 2024) (denying retailer's motion to dismiss ECPA claim, holding it was not protected by party exception when it allegedly used Meta Pixel to intercept its website visitors' health data, in violation of HIPAA); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. 2024) (denying healthcare website's argument that the party exception exempted its use of Facebook Pixel); *Gay v. Garnet Health*, No. 23-CV-06950 (NSR), 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024) (holding defendant was not protected by party exception because it "routinely sent Facebook and Google individually identifiable information that Plaintiffs had entered into" the defendant's website "in violation of applicable law such as HIPAA."); *R.S. v. Prime Healthcare Servs., Inc.*, No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488, at *4-7 (C.D. Cal. Jan. 13, 2025) (same; defendant's "financial gain was contingent on disclosing HIPAA-protected information to third parties."); *Cooper v. Mount Sinai Health Sys., Inc.,* 742 F. Supp. 3d 369, 382 (S.D.N.Y. 2024) (holding plaintiffs stated ECPA claim against health care provider whose website included the Facebook Tracking Pixel); *Mekhail v. N. Mem'l Health Care,* 726 F. Supp. 3d 916, 928 (D. Minn. 2024) (same).

Moreover, Defendant's "broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong." *Cooper,* 742 F. Supp. 3d at 382. "[W]here a covered person intentionally disclosed patients' individually identifiable health information, HIPAA makes such a crime and indeed imposes enhanced penalties when such was done for, inter alia, a 'commercial advantage' or 'personal gain.'" *Id. See also Mekhail,* 726 F. Supp. 3d at 928 n.4 ("it

defies common sense that a clearly harmful act could escape liability as long as it was done for profit."); *Castillo*, 2024 WL 4785136, at *6 ("there is no bright-line rule insulating financial motives from the crime-tort exception."). Defendant cites no case supporting its argument that it is protected by the party exception. It instead cites *In re Meta Pixel Healthcare Litig.*, which held that the party exception was ***unavailable*** where, as here, the plaintiff claimed the defendant used patient data for advertising though Pixel. 647 F. Supp. 3d at 797. "[P]laintiffs' tort claims against Meta appear viable. There is a not-insignificant chance, then, that plaintiffs may be able to show that the crime-tort exception applies." *Id.*[5]

Defendant also cites cases that did not involve collection of health data at all. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1131, 1136 (9th Cir. 2022) (involving claims that communications were intercepted to release "gotcha" undercover videos in an effort to "destroy" a politically divisive organization); *In re Google Inc. Cookie Placement Consumer Priv. Litig.,* 806 F.3d 125, 134 (3d Cir. 2015) (concerning allegations that defendant implanted trackers on personal computers); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1115 (S.D. Cal. 2023) (concerning interception of communications with gaming retailer about "questions about products, order issues, help with the site, etc.") (quoting complaint).

And Defendant cites cases where, unlike here, the Plaintiff did not allege the purpose of the interception. *See, e.g., Zarif v. Hwareh.com, Inc.*, --- F. Supp. 3d ---, No. 23-CV-0565-BAS-DEB, 2025 WL 486317, at *10 (S.D. Cal. Feb. 13, 2025) (dismissing ECPA claim with leave to amend, holding "[t]he Complaint's allegations for the [ECPA] cause of action do not address the purpose of Health Warehouse's interceptions."); *Roe v. Amgen Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) ("There are no allegations in Plaintiffs'

---

[5] *In re Meta Pixel Healthcare Litig.* denied plaintiffs' motion for a preliminary injunction because they had not shown that the law and facts "clearly favored" their position, but expressly observed that their "claim will present differently in a motion to dismiss context." 647 F. Supp. 3d at 797.

complaint supporting the averment that Defendant's primary motivation, or a determining factor, in intercepting Plaintiffs' communications using its data collection tools was tortious or criminal."). In comparison, Plaintiff here does allege the purpose of the interception (to disclose protected information for marketing purposes), which is criminal under HIPAA, as well as statutory and common law privacy rights. FAC ¶ 100.

Similarly unavailing is Defendant's citation of *Doe v. Kaiser Found. Health Plan, Inc.* ("*Kaiser*"), No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024), where the court explicitly did not consider allegations that the defendant allowed health information to be used for the third parties' purposes. Instead, the "order addresses [p]laintiffs' claims . . . that Kaiser hired third parties to collect and/or use information for the benefit of Kaiser." *Id.* at *7. Unlike here,

> as the FAC is currently pled, Kaiser simply hired the third parties to do work for Kaiser, which exposed the third parties to personal information about members, but there is no indication that Kaiser then signed off (either explicitly or implicitly) on the third parties taking that information and using it for their own purposes (and not solely for Kaiser's use).

*Id.* at *7. Here, in comparison, Plaintiff alleges that Defendant allowed health information to be used for *Meta's* purposes. *See* FAC at ¶ 29. She also "alleges a knowing interception and disclosure by Defendant with an illegitimate purpose," *i.e.,* a HIPAA violation and invasion of privacy. *Gaige*, 2025 WL 559719, at *5 n. 5 (similarly distinguishing *Kaiser* and denying motion to dismiss ECPA claim against healthcare company that installed Meta Pixel on its website, holding that allegations that the interception was done to violate HIPAA and invade plaintiff's privacy was sufficient even if the defendant also had a financial motive).

**2. *Plaintiff need not disclose the contents of her intercepted communications.***

Defendant does not (and cannot) argue that the contents of Plaintiff's communications were not intercepted. *See, e.g., In re Facebook,* 956 F.3d at 605 (holding that URLs and

browsing history are "content" because it could "divulge a user's personal interests, queries, and habits[.]"); *In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d at 795 ("while a URL that includes basic identification and address information is not content, a URL disclosing a search term or similar communication made by the user could constitute a communication under the statute.") (internal quotation marks and citation omitted). Instead, Defendant argues that she fails to *specify* what those contents were and complains her pleading is "completely void of any details regarding the *substance* of her searches." *Id.* at 21:16-18 (emphasis added).

But a plaintiff bringing a claim under privacy statutes need not divulge the contents of the very communications she sought to keep private. "[P]leading a CIPA violation does not require identifying a specific communication that was intercepted. Such an inference is reasonable given the detailed allegations of Defendant's practices and Plaintiff's alleged use of [the defendant's programs]." *Greenley v. Kochava, Inc.,* 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (rejecting defendant's argument that the plaintiff "fails to identify a specific 'communication' that was intercepted," concluding the defendant "misunderstands Plaintiff's pleading burden").

The overwhelming weight of authority similarly holds. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1004 (N.D. Cal. 2024) ("Plaintiffs do not need to plead the specific and presumably highlight sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred."); *James v. Walt Disney Co.,* 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023) (denying motion to dismiss CIPA claim; "to the extent Disney suggests Plaintiffs must plead the exact communications they had with the ESPN.com website, other courts have rejected that position."); *Byars v. Goodyear Tire & Rubber Co*., 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (denying motion to dismiss CIPA claim; "there is no requirement that [the plaintiff] specifically allege the exact contents of her communications with [the defendant]. Rather, [the plaintiff] merely needs to show that the contents were not record information, such as her name and address."); *accord Frawley v. Nexstar Media*

*Grp. Inc.,* No. 3:23-CV-2197-L, 2024 WL 3798073, at *6 (N.D. Tex. July 22, 2024) ("Frawley is not required to allege the specific videos he watched to state a claim under the [Video Privacy Protection Act].")

The only case Defendant musters to the contrary is an unpublished decision from the Eastern District of California, Mem. at 21:1-9 (citing *Beltran I*, 2025 WL 1635467 (dismissing with leave to amend)), which is contrary to established pleading standards and the statutes' explicit purpose of protecting privacy, *see* § III.A, *supra*, and does nothing but result in motions to seal amended pleadings that disclose protected health information. *See, e.g., Beltran II*, 2025 WL 2106582, at *2.

**3. *Plaintiff need not allege that Meta did something to "understand" the communication while in transit.***

Plaintiff alleges that "Meta intercepted the communications in real time, and while in transit." *Id.* at ¶ 58. *See also id.* at ¶¶ 19, 38, 114. The pleading standard requires no more, else it "would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *Mata v. Zillow Grp., Inc.,* No. 24-CV-01095-DMS-VET, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) (holding plaintiff sufficiently alleged that Meta intercepted website communications while in transit) (collecting cases); *St. Aubin*, 2024 WL 4369675, at *6 (same).

But according to Defendant, pleading Meta's interception of a communication while in transit is insufficient; it argues that Plaintiff must also allege that Meta did something "to *understand*" the information while it was in transit. Mem. at 23:4-14 (emphasis added). Yet no legal authority supports this new requirement. *See Mitchell v. Sonesta Int'l Hotels Corp.*, No. CV 24-2603-GW-SSCX, 2024 WL 4471772, at *8 (C.D. Cal. Oct. 4, 2024) (holding simultaneous duplication of communications is sufficient to plead interception in transit; "the Court does not find Defendant's argument, based on

a statutory interpretation that no California state court appears to have adopted, to be sufficiently-convincing at this point.”).

Defendant’s reliance on *Torres v. Prudential Fin., Inc.*, No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025), is misplaced. The Court decided *Torres* on summary judgment after a full factual record and involved session replay software, not the Pixel at issue here. The court emphasized that session replay data does not become readable until stored and reassembled and expressly distinguished it from technologies that track browsing histories to create personal profiles for sale to advertisers—conduct the Ninth Circuit held to be actionable interception in *In re Facebook*, 956 F.3d 589, 596 (9th Cir. 2020).

*R.C. v. Sussex Publishers, LLC* similarly did not involve websites using Meta Pixel, but instead Google Analytics, where the plaintiffs alleged that website usage data was sent to Google for processing and was *later* organized based on particular criteria. No. 24-CV-02609-JSC, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025). In comparison, Plaintiff alleges Defendant duplicates communications upon interception, FAC at ¶¶ 38, 114; *In re Facebook*, 956 F.3d at 607-08 (determining Facebook uses “simultaneous, unknown duplication and communication of GET requests”), and Defendant cannot avoid her allegations by mere argument about others’ allegations of a different technology on a motion to dismiss. *Compare M.G. v. Therapymatch, Inc.*, No. 23-CV-04422-AMO, 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024) (rejecting defendant’s argument that “interception was not simultaneous here as two separate communications occurred,” concluding it contradicts the allegation that “Google simultaneously intercepted class members’ data in real time by using embedded Google Analytics Code”).

Further, as even *Torres* recognized, “a plaintiff need only show that the software vendor <u>is capable of</u> using the data it collects for some other purpose; there is no statutory requirement that the vendor actually did so.” 2025 WL 1135088, at *3 (N.D. Cal. Apr. 17, 2025) (emphasis in original).

At bottom, Defendant simply denies Plaintiff's allegation that Meta intercepted the communications while in transit, FAC at ¶¶ 19, 38, 58, 114, and it cannot be reconciled with the Rule 12(b)(6) standard. *See, e.g., In re Yahoo Mail Litigation*, 7 F. Supp. 3d 1016, 1027, 1036 (N.D. Cal. 2014) (denying motion to dismiss CIPA claim; "The Court must defer resolution of whether Yahoo accessed the emails only after the emails were on Yahoo's servers until after discovery makes clear where and how Yahoo's scanning technology intercepted the emails."); *United States v. Councilman*, 418 F.3d 67, 80 (1st Cir. 2005) (en banc) (reversing dismissal of ECPA indictment, holding that the ECPA covered communications in transient electronic storage, rejecting a rigid transit/storage dichotomy).

### D. <u>Plaintiff adequately alleges invasion of privacy.</u>

According to Defendant, it cannot be liable for invasion of privacy because it was the intended recipient of the information. Mem. at 23:24-24:2. This is a repeat of its "party exception" argument, addressed at § III.B.1, *supra*. Moreover, Plaintiff gave her information to Defendant for the provision of healthcare services, not for Defendant to use her data for marketing or to commit a tort or crime. Defendant then claims that its conduct was not sufficiently egregious to give rise to a claim, Mem. at 24:3-27, incorrectly contending that Plaintiff alleges only that third parties "could have" accessed her records. *Id.* at 24:20-23.

Not true. She alleges that her sensitive information was disclosed to a third party. FAC at ¶¶ 37, 38, 42, 75, 76, 111, 123. Moreover, she alleges that Defendant intentionally placed software to *ensure* that her data was sent to third parties. It knowingly installed software that "is designed to transmit each website user's actions to Meta," *id.* at ¶ 114, "determining which webpages included them, what information was tracked and shared, and how events were categorized." *Id.* at ¶ 115. And Defendant did not just collect and anonymize the data for research purposes; it tied each user to their Facebook ID and allowed advertisers access for commercial exploitation. *Id.* at ¶¶ 8, 113, 148. Individuals who conduct an online search of sensitive medical information

on a healthcare website reasonably expect that their queries and website activities will remain private. FAC ¶¶ 124, 125. This commonly-held expectation is reflected by extensive legislation protecting health information, including HIPAA and CMIA.

Defendant's conduct is materially distinct from the monitoring of employees' viewing of pornographic material in a workplace, as in *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 277 (2009), generic searches on an internet browser, as in *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 974-75 (N.D. Cal. 2014) and *Low v. LinkedIn Corp*., 900 F. Supp. 2d 1010, 1017 (N.D. Cal. 2012),[6] or where the website's "representation in its Privacy Policy is ambiguous, its data collection is not blatantly deceitful," *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022). *Compare, supra* (describing Defendant's privacy policy, which stated that Defendant "hold[s] a responsibility to safeguard your personal health information" and uses PHI only for health-related activities).

Moreover, courts addressing healthcare website's installation of Meta Pixel have repeatedly held that allegations similar to Plaintiff's state an intrusion of seclusion claim, and whether the website's conduct is sufficiently egregious is a question of fact improper on a motion to dismiss. *See, e.g., Gaige*, 2025 WL 559719, at *8.

Finally, "[c]ontrary to Defendants' argument, [Plaintiff is] not required to allege that Defendants continued tracking [her] health information after they left Defendants' Web Properties in order to establish a reasonable expectation of privacy." *Doe v. Tenet Healthcare Corp.,* No. 1:23-CV-01106-DC-CKD, 2025 WL 1635956, at *18 (E.D. Cal. June 9, 2025) (citing cases) (denying motion to dismiss similar claims involving health care website using Meta Pixel). *Compare* Mem. at 24:19-27.

///

///

///

---

[6] Both decisions are arguably no longer good law, after the Ninth Circuit's *In re Facebook* decision. 956 F.3d at 606.

### E. Plaintiff adequately pled a CMIA claim.

#### 1. *Plaintiff alleged she entered personally identifiable medical information into Defendant's website.*

Defendant repeats its argument that Plaintiff does not identify her health condition or the words she searched, Mem. at 25:20-25, which is discussed at § III.A, *supra*. *See, e.g., Barbour*, 2023 WL 2618967, at *7.

Defendant also argues that medical information for a CMIA claim must include the person's medical treatment. Mem. at 26:7-8. But that's what Plaintiff alleges: Defendant tracked the "exact terms and words Plaintiff . . . searched on the Website," collected "the selections [she] made from drop-down menus," links clicked, and private information "including [her] health conditions." FAC at ¶¶ 33, 49-50. It enabled Meta to access personally identifying information (including Facebook IDs) "alongside health-related details such as appointments, medical conditions, diagnoses, patient history, and medical records. Under the CMIA, this combination of identifying and medical information qualifies as confidential information." FAC at ¶ 148.

"Medical information" under the CMIA is not limited to only health records. It includes, for example, a search for a doctor or an appointment can reveal medical information under the CMIA. *Barbour*, 2023 WL 2618967, at *7 (holding sufficient that a "suspected medical condition is being revealed."). *See also B.K. v. Desert Care Network*, No. 2:23-CV-05021 SPG (PDX), 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) (approving allegations that did not disclose any medical condition). "Regardless of whether the technologies were inside a patient portal, or whether they were on the appointment page, the question is whether the transmission of a URL containing the nature of the appointment constitutes medical information. The Court finds that it does." *St. Aubin*, 2024 WL 4369675, at *10 (holding appointment information coupled with IP addresses or Facebook IDs constitutes a course of treatment under the CMIA's definition of "medical information.").

Defendant also proclaims that Plaintiff did not allege that the information was "individually identifiable." Not so. She alleges that Defendant combined Plaintiff's health information with her Facebook ID and other identifiers. FAC at ¶¶ 8, 113, 148. "It is difficult to understand what more [defendant] believes would be necessary for information to be identifying." *Strong v. LifeStance Health Group Incorporated*, 2025 WL 317552, at *5 (D. Arizona January 28, 2025) (denying dismissal of claims related to healthcare website's use of Meta Pixel). "The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user." *Walgreen*, 733 F.Supp.3d at 890 (concluding Plaintiff adequately alleged information gathered by healthcare provider's website through Meta Pixel was personally identifiable) (internal quotation marks and citation omitted). *See also Gaige*, 2025 WL 559719, at *4 (same); *Barbour*, 2023 WL 2618967, at *7 (same).

**2. *Plaintiff alleges that her data was viewed by a third party.***

Plaintiff alleges that Meta actually collected the data, FAC at ¶¶ 55, 57, and she even provides screenshots showing website activity intercepted by Meta. *Id.* at ¶¶ 52, 53. She alleges that Meta's advertising business is built on its collection of browsing history, which enables it to build consumer profiles and deliver targeted advertisements. *Id.* at ¶¶ 10, 25, 29, 56-58. Similar allegations were deemed sufficient to show that the information was viewed by an unauthorized party under the CMIA in *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 975 (S.D. Cal. 2023) (holding sufficient allegations "that 'Meta regularly viewed' the information" and "information regarding Meta's business model and how it uses the information for targeted advertising."). "Whether the alleged use by Meta of the information, through perhaps algorithms, amounts to viewing or accessing under CMIA is a question the Court cannot answer on Defendant's motion to dismiss. It is sufficiently plausible at this time that Plaintiffs' information was 'viewed or otherwise accessed' as contemplated by CMIA." *Id.*

Ignoring these allegations, Defendant insists that Plaintiff fails to allege that an unauthorized third party actually viewed her medical information. Mem. at 27-31. Here,

it cherry picks allegations stating that Meta *can* view the information, *id.* at 31:2-9 (citing FAC at ¶¶ 9, 37, 42), while ignoring the allegations that Meta actually *does* view the information. *See, e.g.,* FAC at ¶ 55 ("Meta intercepts information, including the specific health condition Plaintiff . . . searched, along with a whole host of other personally identifying information, in order to uniquely identify the user and the device accessing Defendant's website); *id.* at ¶ 57 ("These interceptions included a variety of personally identifying information which Meta utilized to identify their Facebook accounts for targeted advertising.").

Defendant's argument is nothing more than a dispute of Plaintiff's well-pled allegations. In contending that Plaintiff must allege additional facts, Defendant relies on cases involving theft of computer equipment where there was no indication the thief ever viewed the health information. *See Regents of Univ. of California v. Superior Ct*., 220 Cal. App. 4th 549, 554 (2013) (theft of hard drive in home invasion); *Sutter Health v. Superior Ct*., 227 Cal. App. 4th 1546, 1550 (2014) (theft of healthcare provider's desktop computer); *Vigil v. Muir Med. Grp. IPA, Inc*., 84 Cal. App. 5th 197, 206 (2022) (former employee's theft of computer records). These burglary cases are inapposite: none involved a defendant's intentional installation of software designed to disclose data to third parties, nor did they consider well-pled allegations that such third parties actually viewed the data. See, e.g., *Castillo,* 2024 WL 4785136, at *14 ("Disclosure of personal health information to third-party online advertisers is sufficient to allege that medical information was viewed by unauthorized third parties under the CMIA."); *St. Aubin*, 2024 WL 4369675, at *11 (rejecting defendant's argument that "it was possible no human viewed the information" because it "violates the stricture that a complaint's allegations are to be construed in favor of the plaintiff.") (emphasis in original).

Defendant then tries to twist *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813 (N.D. Cal. 2023), which denied the motion to dismiss, as requiring Plaintiff allege that Meta acted upon the disclosed data, such as by delivering advertisements targeted to the disclosed medical condition. Mem. at 30:10-24. But nothing in *Doe v.*

*Regents* hinted that such was required; "[s]he simply must plead facts that raise more than a sheer possibility that the defendant has acted unlawfully. She has done so here." 672 F. Supp. 3d at 819.

**3. *Defendant's opposition to class certification is premature.***

Lastly, Defendant demands Plaintiff's CMIA class action allegations be stricken, contending that they involve "highly individualized inquiries." Mem. at 32-34. It cites a case issued under an ancient version of Rule 23, *Kamm v. California City Dev. Co.,* 509 F.2d 205 (9th Cir. 1975) which dismissed class claims because they were duplicative of a suit brought by the Attorney General that had already provided significant relief to class members and "the record itself provided a sufficient evidentiary base on which the 'superiority' question might be determined." *Id.* at 210. No similar record exists here.

As *Kamm* warned, "[t]he priopriety of a class action cannot be determined in some cases without discovery" and "[t]o deny discovery [in such cases] would be an abuse of discretion." *Id. See also ABS Ent., Inc. v. CBS Corp*., 908 F.3d 405, 427 (9th Cir. 2018) (similar); *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) ("courts have repeatedly emphasized that striking class allegations under Rule 12(f) is even more disfavored" than the "drastic remedy" of "striking a portion of a pleading") (collecting cases); *Lyons v. Coxcom, Inc.,* 718 F. Supp. 2d 1232, 1236 (S.D. Cal. 2009) ("the granting of motions to dismiss class allegations before discovery has commenced is rare"); *Fernandez v. CoreLogic Credco, LLC.*, 593 F. Supp. 3d 974, 996 (S.D. Cal. 2022) (same, collecting cases); 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Civil § 1785.3 (3d 2005) (noting the practice employed in the overwhelming majority of class actions to resolve class certification only after an appropriate period of discovery).

Defendant *assumes* that there might be class members who have not tendered medical information by visiting Defendant's website, but only class-wide discovery can test Defendant's hunch. For example, by automatically combining class members'

Facebook ID with their visit to a health care website, "it is indicative that the individual has received or will receive health care services . . . and thus relates to the individual's past, present, or future health . . ." FAC at ¶ 69 (quoting Department of Health and Human Services Office for Civil Rights Bulletin). *See also* 78 FR at 5598. Defendant also *assumes* that Meta did not "actually view[]" this medical information, another contention that class-wide discovery can disprove. *See Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 584 (N.D. Cal. 2025) (certifying class action under CMIA, concluding that plaintiffs adduced common proof of the defendant's services and practices, including "that the information was viewed"). These are uniform practices affecting the entire proposed class, and striking the class allegations before predominance and superiority can be fully developed would be premature. *See, e.g., Gaige*, 2025 WL 559719, at *9 (denying motion to strike class allegations in CIPA and CMIA claim involving health care provider's use of Meta Pixel; "determining issues related to class suitability should be resolved during a motion for class certification, after an opportunity for discovery"); *In re Meta Healthcare Pixel Litig.,* 713 F. Supp. 3d at 660 ("the shape this consolidated class action will ultimately have – with respect to any class or classes certified or otherwise – will be determined by me at the appropriate time.").

Defendant also argues that there would be individualized issues regarding damages, Mem. at 32:24, but "that makes scant sense. Plaintiffs are seeking statutory damages under the CMIA, a fact which is the same for all class members." *Frasco*, 349 F.R.D. at 584-85; Cal. Civ. Code § 56.36(b)(1) ("it is not necessary that the plaintiff suffered or was threatened with actual damages.").

Defendant does not cite any case striking CMIA class allegations. It is further not helped by citing *Barnes* and *Krayzman.* Mem. at 32:10-18. In *Barnes,* the Telephone Consumer Protection Act class definition was "fatally overbroad" and included every person who "has ever received a telephone call from Coca-Cola," whereas the statute gave a claim only to those who received calls "made with a pre-recorded voice or made without consent" within the statute of limitations. *Barnes v. Coca-Cola Co.*, No. 1:22-

CV-01511-KJM-EPG, 2025 WL 1027431, at *5 (E.D. Cal. Apr. 7, 2025). And in *Krayzman*, the court struck only the nationwide false advertising class allegations seeking to capture every person who purchased a certain product through any retail channel, though the claims were based only on representations made on an Amazon store webpage. *Krayzman v. Yalla Ventures, Inc.*, No. 2:24-CV-03610-AB-AS, 2024 WL 4536761, at *1, *6 (C.D. Cal. Oct. 16, 2024). Notably, *Krayzman* denied the motion to strike the California class allegations as premature, *id.* at *5, and struck only the nationwide class allegations because "reliance is a necessary element of a claim of common law fraud." *Id.* at *6. Reliance, however, is not an element to Plaintiff's claims.

## V. CONCLUSION

Plaintiff respectfully requests the Court deny Defendant's Motion to Dismiss and Motion to Strike in its entirety. In the alternative, should the Court determine that Plaintiff's allegations fail to allege facts with sufficient specificity, Plaintiff respectfully requests leave to amend.

Respectfully submitted,

**Swigart Law Group, APC**

Date: September 26, 2025

By: *s/ Joshua Swigart*
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com
Attorneys for Plaintiff
and the Putative Class

**Shay Legal, APC**

Date: September 26, 2025

By: *s/ Daniel Shay*
Daniel G. Shay, Esq.
Dan@ShayLegal.com
Attorneys for Plaintiff
and the Putative Class